# IN THE
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

ROY F.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 1:21-cv-01198-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Roy F. filed an application for disability insurance benefits (DIB) on December 9, 2014 and for supplemental security income (SSI) on April 8, 2015[2], alleging disability beginning on April 15, 2013. His DIB and SSI claims were denied initially and upon reconsideration, and Roy thereafter requested a hearing before an administrative law judge. At a hearing in March 2018, Roy was

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.
[2] Roy identifies this date, the Commissioner identifies December 2014, and the transcript identifies March 5, 2015.

1

represented by an attorney, and Roy and a vocational expert (VE) testified. After his claims were denied by the administrative law judge and request for review by the Appeals Council was denied, Roy appealed to this Court in December 2019. The parties stipulated to a remand in that case for further proceedings, and a second hearing was accordingly held on February 22, 2021 before the Honorable David W. Thompson (ALJ). At that hearing, Roy was represented by a different attorney, and Roy, Medical Expert (ME) Allan N. Levine, and a different VE testified. Following the February 2021 hearing, Roy's claims were again denied on March 19, 2021, and the ALJ's March 2021 Decision ultimately became the final decision of the Commissioner. Roy timely filed the instant civil action seeking review of that Decision on July 16, 2021.

## II

Roy challenges the ALJ's Decision for the following reasons: 1) the ALJ's residual functional capacity determination was not supported by substantial evidence; and 2) the ALJ's Decision violated SSR 16-3p.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[3] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. Compare 20 C.F.R. § 404.1501 et seq. (DIB) with 20 C.F.R. § 416.901 et seq. (SSI). Thus, the Court may at times only cite to the DIB regulations.

4)     is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)     is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Roy claims error on the ALJ's part at Step Four.

## A

At Step One, the ALJ determined Roy had not engaged in substantial gainful activity since April 15, 2013, the alleged onset date. AR 985. At Step Two, the ALJ determined Roy had the following severe impairments: right wrist ulnar carpal impaction and fibrocartilage complex tear, status post surgery; left wrist tendinitis, status post surgery; diabetes mellitus; obesity; depressive/bipolar related disorders; and anxiety/obsessive-compulsive disorders. *Id.* At Step Three, the ALJ determined Roy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 986. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to lifting and carrying up to 10 pounds frequent [sic] and 20 pounds occasionally bilaterally or with the non-dominant (left) upper extremity only. Limited to lifting and carrying up to 10 pounds with the dominant

>(right) upper extremity. Able to stand and/or walk at least 6 hours during a regular 8 hour workday; Limited [sic] to climbing ramps and stairs with the use of a hand railing; Limited [sic] to no climbing of ladders, ropes and scaffolds; Needs [sic] to avoid concentrated exposure to extreme cold, unprotected heights and unprotected moving machinery; Limited [sic] to no forceful gripping, pinching or torque activities such as using a hammer or screw driver, or unscrewing a jar lid; Limited [sic] to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. The individual is limited to jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors.

AR 989. He found Roy was unable to perform any past relevant work. AR 999. The ALJ next explained that Roy was a younger individual age 18-49 on the alleged disability0 onset date and subsequently changed age category to closely approaching advanced age and that Roy had a marginal education. AR 1000. At Step Five, the ALJ determined that considering Roy's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Roy could perform. *Id.* Thus, the ALJ concluded Roy had not been under a disability from April 15, 2013 through the date of the Decision, March 19, 2021. AR 1001.

B

Roy first argues that the ALJ failed to provide a proper basis for rejecting ME Levine's testimony that Roy could not do repetitive lifting, and further failed to account for numerous psychological limits opined by State Agency doctor Darrell Snyder, Ph.D. at the reconsideration stage of determination. Roy asserts that the RFC determination thus omitted potentially outcome-determinative limitations without proper explanation making the RFC determination and Decision as a whole not supported by substantial evidence. Roy says the ALJ's

alleged error is outcome-determinative where, unless Roy was found to have transferable skills, a finding of disabled was mandated by law as of his 50th birthday pursuant to the Social Security Administration's regulations. Plf's MSJ (Doc. 13 at pgs. 11-12) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.10); *see* ALJ Dec. (AR 1000) (stating the "[t]ransferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills"). Pointing to Dr. Levine's hearing testimony that evidence showing significant degenerative changes in Roy's right wrist after May 2013 limited him to lifting and carrying 10 pounds frequently and 20 pounds occasionally with both hands or with his nondominant left hand, the Commissioner argues that substantial evidence supported the ALJ's assessment of Roy's work abilities.

An ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). At the February 2021 hearing, ME Dr. Levine discussed Roy's medically determinable impairments involving his left and right wrists and that the medical records were replete with continued subjective complaints of pain in the left and right wrists. ME Dr. Levine opined:

> [A]llowing for limitations of the documented significant degenerative changes of the right wrist . . . I felt the claimant should be capable of lifting and carrying occasionally 20 pounds, frequently ten, with both or with the left upper extremity alone. And I felt he could only occasionally lift and carry ten pounds with the right alone . . . I felt he should avoid forceful grip, pinch or torque activities with the right upper extremity . . . Otherwise, I felt he had unlimited use of the upper extremities for fine and gross manipulation.

AR 1060-62.  During questioning of ME Dr. Levine by Roy's attorney, the attorney stated:

> Q. . . . Then finally, I would just ask, with your limitation to the use of the right upper extremity, do you have an opinion as to whether there would be any issue with, you know, when lifting, you know, less than ten pounds – or ten pounds, can that be done repetitively throughout the day, or should that be broken up?
> A. Only occasional.
> Q. Right, but occasionally is up to a third of the workday, so that doesn't really tell us when that third occurs.
>
> \* \* \*
>
> A. *I guess I could made [sic] it occasionally, but not repetitive. Not more than two or three times in succession without a one to two-minute break from that position.*

AR 1073-74 (emphasis added).

> In his Decision, at Step Five, the ALJ explained:
>
> The claimant's attorney's attempt to twist the testimony of Dr. Levine regarding repetitive lifting was not persuasive. Repetitive is an all day, or most of the day, or for long periods, concept. While Dr. Levine testified that he did not think the claimant would be able to perform repetitive tasks, counsel defined this as not doing a task more than twice in a row and then needing a three minute break. Dr. Levine did not give this definition. Dr. Levine only said the claimant could not do certain repetitive tasks. Dr. Levine did not give time periods for the task or for rests before returning to the tasks.

AR 1001.  The ALJ's glaring factual error here is that ME Dr. Levine *did* give time periods for the task of repetitive lifting with the right upper extremity before returning to that task – "Not more than two or three times in succession without a one to two-minute break from that position."  AR 1074.  For the reasons explained below, that is a serious factual mistake that warrants remand.  *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (explaining a reversal and remand may be required "if the ALJ based the decision on serious factual mistakes or omissions").

7

**1**

The Commissioner contends that Roy's argument that the ALJ erred in discounting ME Dr. Levine's testimony regarding repetitive lifting misses the mark in several ways. The Court is not persuaded by any of the Commissioner's three stated reasons. First, while the Commissioner says Dr. Levine in no way suggested that he meant to alter or amend his earlier testimony about Roy's work abilities, there is no indication in the hearing transcript that he did *not* mean to alter or amend his earlier testimony regarding Roy's "occasional" lifting of up to 10 pounds with his right upper extremity. The transcript in fact indicates he conceded the point that a limitation to "occasionally" does not "really tell us when that third occurs" and therefore added that he could "make it occasional, but not repetitive." AR 1074.

Second, to the extent the Commissioner emphasizes that Dr. Levine's response to Roy's attorney's question made clear he was speaking to Roy's ability to use his right arm and hand only, the ALJ did not so emphasize. Rather, the ALJ stated generally that Dr. Levine testified he did not think Roy would be able to perform repetitive tasks, that Dr. Levine only said Roy could not do certain repetitive tasks, and that the "bottom line" with the issue of repetitive lifting was productivity. Roy's attorney's question to the VE did not include a limitation to the right upper extremity alone; instead, the attorney asked whether the identified jobs would be affected where the individual could not have to lift anything more than twice in a row without a one to three-minute break from lifting. After some clarifying questions were asked by the VE and answered by Roy's attorney, the VE testified the identified jobs could not be done. AR 1082. Roy's attorney pressed:

> Q. So, if I didn't put a time limit on it, but just an activity that involved lifting. If he couldn't do more than two activities in a

>    row that involved lifting without a one to three-minute break, would that change your answer at all?
> A. Yes.
> Q. How so?
> A. Because, work does usually involve repetitive things, so it would be more than two in a row. And then if they're having to have those breaks it's – they're going to be more off task than 10%.

AR 1083.[4] The foregoing illustrates that the ALJ's factual mistake was outcome-determinative. After all, the ALJ stated explicitly that Roy's

> ability to perform all or substantially all of the requirements of [the full range of light] work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC].

AR 1000. Of course, where the ALJ rejected as unpersuasive Roy's attorney's attempt to "twist" Dr. Levine's testimony regarding repetitive lifting and believed, incorrectly, that Dr. Levine did not give time periods for the task or for rests before returning to the tasks, the ALJ did not include any limitations on repetition whatsoever in the RFC.

The Commissioner's third and final challenge is that although Roy is correct that the Dictionary of Occupational Titles (DOT) describes the jobs[5] the VE listed as requiring "repetitive or short-cycle work," generally, Roy is incorrect that the "repetitive" description related to lifting and carrying. The Commissioner summarily states that the DOT job descriptions for the lifting and carrying requirements of those three jobs are consistent with the ALJ's assessment of Roy's

---

[4] The Court notes it is unable to trace the path of the ALJ's reasoning from this colloquy to the ALJ's statement that the "VE was apparently confused by counsel's additional questions" where there was no indication of confusion when the VE finally answered. See Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning").
[5] The jobs were Marker, Router, Sorting agricultural produce, Cleaner/polisher, and Lens matcher.

9

work abilities and Dr. Levine's testimony. Certainly, the jobs the VE listed are identified as "light work" which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b); *see also* DOT, https://occupationalinfo.org/appendxc_1.html#STRENGTH (last visited Jan. 6, 2023) (defining "light work" as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects"). But the ALJ expressly recognized Roy's ability to perform all or substantially all of the requirements of light work had been impeded by additional limitations such that the ALJ turned to the VE (purportedly using the limitations found by Dr. Levine). And, as Roy points out, a repetitive task which occurs no more than one-third of the day (aka "occasionally"[6]) may be included in the job duties of a particular occupation. Thus, to the extent a limitation on even occasional lifting was supported by the record, the ALJ was required to include that in the hypothetical presented to the VE.[7] This is obviously so given the VE's actual testimony that a hypothetical person limited to light work, further limited to frequently lifting and carrying up to 10 pounds frequently and 20 pounds occasionally bilaterally or with the left upper extremity only and limited to lifting and/or carrying up to 10 pounds with the dominant right upper extremity, and further limited still to not lifting items less than 10 pounds more than twice without a three-minute break could not perform the identified jobs. AR 1082.

---

[6] *See* SSR 83-10 (defining "occasionally" as "occurring from very little up to one-third of the time").

[7] The Court notes that ME Dr. Levine testified that he "felt [Roy] could only *occasionally* lift and carry ten pounds with the right alone." AR 1061 (emphasis added). The ALJ's RFC finding and hypothetical question to the VE omitted a limitation to occasional lifting and carrying with Roy's right arm alone, instead providing that Roy was limited to lifting and/or carrying up to 10 pounds with the right upper extremity. *Compare* AR 1061; AR 1062-63 (ALJ confirming ME Dr. Levine testified to "only up to ten pounds with the right alone" to which the VE replied "And that's only occasional"); AR 989; *and* AR 1079.

Ultimately, the Court cannot dismiss the ALJ's factual mistake as easily as the Commissioner does.

2

Roy further argues that as for the remaining job the VE identified at the hearing – Office Helper (which did not include "R: Performing repetitive or short-cycle work" in the job description) – there was evidence that Roy could not read and write sufficiently to do the work of an Office Helper. The ALJ considered Roy's representations that he had a sixth-grade education and ultimately determined Roy had a marginal education. A "[m]arginal education means the ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. [SSA] generally consider[s] that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2). The problem, according to Roy, is that even where the ALJ accepted illiteracy in the Decision, the jobs he cited were three of the five Roy says included repetitive work in the job description such that the ALJ's re-interpretation of Dr. Levine's testimony as to repetitive lifting was outcome-determinative. The ALJ's treatment of the record evidence pertinent to the Office Helper position additionally precludes the Court from finding he sufficiently confronted the evidence as a whole in assessing the RFC.

The Commissioner argues that Roy appears to suggest he is illiterate but does not cite any evidence in the record to show the ALJ should have considered him illiterate as opposed to an individual with a marginal education. Roy replies that he does not argue he was entirely illiterate, but rather, that he required significant help with reading and writing and therefore would not have likely been able to do the work of an Office Helper.

20 C.F.R. § 404.1564(b) states, in relevant part:

11

> Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, *may no longer be useful or meaningful in terms of your ability to work*. Therefore, *the numerical grade level that you completed in school may not represent your actual educational abilities*. These may be higher or lower. However, *if there is no other evidence to contradict it*, we will use your numerical grade level to determine your educational abilities.

(emphasis added). The evidence of record included Roy's testimony that he had difficulty reading, that his wife completed a job application for him, that friends helped him read, that his daughter helped him read, that he received help with reading to obtain his driver's license, and that questions were given to him orally. In a medical source statement, Roy's doctor noted that Roy did not have "much of an education and he can't read very well and can't write well." AR 1539.

> The job of Office Helper indicates a Language level of 2 which translates to:
>
> Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
> Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

DOT, https://occupationalinfo.org/appendxc_1.html#III (last visited Jan. 6, 2023). Given that there was evidence of record to contradict Roy's educational abilities based on numerical grade level alone, the ALJ was required to sufficiently consider that fact. He did not, and his failure to do so only highlights the problem with relying, in part, on the job of Office Helper to conclude Roy was not disabled. *See Yourek v. Barnhart*, 334 F. Supp. 2d 1090, 1093 (N.D. Ill. 2004) (finding evidence including the claimant's ability to read and write more than his own name, completion of 11th grade, and ability to obtain a driver's license was not

inconsistent with a finding of literacy, neither was it sufficient for such a finding once the claimant raised the possibility of illiteracy, and the ALJ had an obligation to develop a complete record once the claimant raised the issue of his potential illiteracy).

Here, the ALJ repeatedly referenced Roy's sixth grade education and found the fact Roy had sent, in one particular instance, over 200 text messages and phone calls to "cast[] doubt over [Roy's] allegation of not being able to read and write." AR 996. An ALJ must support his findings with substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A reasonable mind may not accept sending 200 text messages in one instance to be adequate to cast doubt over an allegation of not being able to read and write, at least not enough to cast doubt over an allegation of not being able to read and write at a sixth-grade level or over the other evidence of record indicating such an inability. Indeed, current technology allows a person to merely speak into their phone in order to send a text. *See Kenneth S. v. Saul*, No. 18 C 5047, 2020 WL 419418, at *3 (N.D. Ill. Jan. 27, 2020) ("A literacy determination is a highly fact-bound question, and the Commissioner bears the burden of establishing that [the claimant] is literate") (internal citations omitted). The Court recommends remand.

### C

Because the Court has determined the ALJ committed error that warrants remand, the Court need not address Roy's remaining arguments. However, in the event this matter is remanded, the Commissioner should remain cognizant of those additional arguments.

### IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion

for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on January 9, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE